UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-md-02311-SFC-RSW<br>Honorable Sean F. Cox |
| In Re: Fuel Injection Systems<br>In Re: Valve Timing Control Devices | Case No. 2:13-cv-02205<br>Case No. 2:13-cv-02505 |
| THIS RELATES TO:<br>State Attorneys General | |
| STATE OF CALIFORNIA,<br>ex rel. Rob Bonta,<br>Attorney General of the State of California<br><br>Plaintiffs,<br><br>v.<br><br>Mikuni Corporation<br><br>Defendant. | Case No. 2:22-cv-11576<br><br>Complaint for Damages, Civil Penalties, and Injunctive Relief<br>Demand for Jury Trial |

The State of California, through Rob Bonta, the Attorney General, in his official capacity as the chief law enforcement officer of the State of California, files this complaint against Mikuni Corporation ("Defendant" or "Mikuni"), and alleges:

**NATURE OF ACTION**

1. Defendant and its co-conspirators conspired to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the price of fuel injection systems, including injectors, high pressure pumps, rail assemblies, feed lines and other components sold as a unitary system which can also be sold as part of a broader system,

1

such as an engine management system, or as separate components, such as the injectors, feed lines, high pressure pumps, and/or rail assemblies; and valve timing control devices including the VTC actuator and/or solenoid valve (also referred to as variable valve timing devices and/or variable timing control devices) ("Relevant Parts"). These price-fixed parts were installed in automobiles purchased by Plaintiffs.

2.  For the duration of the conspiracies, from at least June 2002 through at least February 2010, the exact dates being unknown to Plaintiffs, Defendant's actions resulted in fixing, stabilizing, and maintaining prices for the Relevant Parts. Due to Defendant's unlawful conduct, the State of California and its state agencies were deprived of open and fair competition when purchasing the Relevant Parts and paid higher-than-competitive prices for such parts and for automobiles installed with them.

3.  Competition authorities in the United States, the European Union, and Japan have been investigating a number of conspiracies involving automotive parts since at least February 2010.

4.  Defendant and its co-conspirators affected millions of dollars of commerce. The State of California, California businesses, and consumers suffered antitrust injury to their business or property due to Defendant's conspiracies to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and artificially inflate prices for the Relevant Parts during the duration of the conspiracies.

## JURISDICTION AND VENUE

5.  Plaintiffs bring this action to secure damages, permanent injunctive relief, civil penalties, and reasonable attorneys' fees pursuant to Section 4 (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. §26) for violations of Section 1 of the Sherman Act (15

2

U.S.C. §1), as well as sections 16720 and 17200 *et seq.* of the California Business and

Professions Code.

6.  This Court has original jurisdiction over the subject matter of all causes of action alleged

    in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1337.  This Court has subject matter

    jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs'

    state law claims are so related to the federal question claims that they form part of the

    same case or controversy that would ordinarily be tried in one judicial proceeding.

7.  Venue is proper in the United States District Court, Eastern District of Michigan,

    pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391.

    Defendant transacts business in the United States, including in this district, committed an

    illegal act, or are found in this district, and a substantial part of the events giving rise to

    the claims arose in this district.

## PARTIES

### Plaintiffs

8.  The State of California is authorized to file Count I under 15 U.S.C. §§ 15 and 26 to

    enjoin Defendant from the violations alleged herein.

9.  The Attorney General brings this action on behalf of the Plaintiffs the State of California,

    including California state agencies, for damages, civil penalties, injunctive, and equitable

    relief.

10. The Attorney General of California is the chief legal officer of the State of California and

    the enforcement authority of sections 16720 and 17200 *et seq.* of the California Business

    and Professions Code, and is authorized to file Counts II, III, and IV.  As California's

chief law enforcement officer, the Attorney General enforces California's antitrust laws, including the Cartwright Act. Cal. Bus. & Prof. Code §§ 16700 - 16770.  The Attorney General is specifically authorized to obtain injunctive and other equitable relief, restitution, and civil penalties to redress unfair, unlawful, and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

## Defendant

11. Defendant Mikuni Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.

## Co-Conspirators and Agents

12. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendant in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracies or in furtherance of the anticompetitive conduct.

13. Plaintiffs reserve the right to name some or all of the persons or entities who acted as co-conspirators with Defendant in the alleged offenses as Defendants.

14. Any reference in this Complaint to any act, deed, or transaction by a corporation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

15. Defendant is also liable for acts of companies it acquired through mergers or acquisitions which are done in furtherance of the alleged conspiracies.

16. Defendant named herein acted as the agent or joint venture of or for the other co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

## FACTUAL ALLEGATIONS

17. Defendant engaged in the business of manufacturing and selling the Relevant Parts to automobile manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere.

18. Fuel injection systems admit fuel or a fuel/air mixture into engine cylinders, and may include injectors, high pressure pumps, rail assemblies, feed lines and other components sold as a unitary system. Fuel injection systems can also be sold as part of a broader system, such as an engine management system, or as separate components, such as the injectors, feed lines, high pressure pumps, and/or rail assemblies. Valve timing control devices control the timing of engine valves' operation, and include the VTC actuator and/or solenoid valve.

19. The Relevant Parts are installed by original equipment manufacturers ("OEMs") in vehicles as part of the automotive manufacturing process.

20. For vehicles, the OEMs – mostly large automotive manufacturers such as Ford Motor Company, Toyota Motor Corporation, General Motors Corp., etc. – purchase the Relevant Parts directly from Defendant. The Relevant Parts may also be purchased by component manufacturers who then supply such systems to OEMs. These component manufacturers are also called "Tier 1 Manufacturers" in the industry. Tier 1 Manufacturers supply Relevant Parts directly to an OEM.

21. During the period of conspiracies, Defendant manufactured the Relevant Parts (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and/or (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

22. Automobile manufacturers issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis when they purchase Relevant Parts. Automotive parts suppliers, including Defendant, submit quotations to automobile manufacturers in response to RFQs.  The winning bidder supplies parts to the automobile manufacturers for the lifespan of the car model, usually lasting four to six years.  The bidding process for a certain car model starts approximately three years prior to the start of production.

23. Defendant have sold Relevant Parts to multiple automobile manufacturers which installed them in automobiles made and sold in the United States and elsewhere.

### Structural Characteristics of the Automotive Parts Market

24. The structural characteristics of the automotive parts market are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. These characteristics include high barriers to entry and inelastic demand.

25. There are substantial barriers to entry in the markets for Relevant Parts. It would require substantial initial costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long standing relationships with customers. These costs are considered high barriers to entry thereby making market entry more difficult if not altogether precluding it.

26. Due to high barriers to entry, incumbent firms have incentive to collude and keep supra-competitive prices. High barriers to entry also facilitate the maintenance of collusion since incumbents do not face the risk of new entrants engaging in price competition.

27. "Elasticity" is a term used in economics to describe the sensitivity of supply and demand to changes in the price. Demand for a certain product is "inelastic" when an increase in price of the product creates only a small change in the quantity demanded of that product. Consumers of the product whose demand is inelastic would continue to buy it despite a price increase.

28. When customers are not sensitive to a price increase, a cartel can increase price and maintain relatively level sales volume. Thus, it could continue to keep supra-competitive prices with relatively stable demand and increase profit.

### Government Investigations

29. The United States Department of Justice ("Department of Justice"), as well as authorities in the European Union and Japan, started global, industry-wide investigations into possible violations of the antitrust laws in the auto parts industry in 2010. The complete scope of the investigations is unknown.

30. The Department of Justice publicly announced aspects of the investigation when FBI agents raided the offices and factories of suspected companies. Since the raids, the investigation has continued to this date. So far 46 companies have been convicted and collective fines total more than $2.9 billion.

### Trade and Commerce

31. During the period of conspiracies, Defendant and its co-conspirators sold the Relevant Parts to automobile manufacturers located in various states in the United States in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, equipment and supplies necessary to the production and distribution of the Relevant Parts sold by Defendant and its co-conspirators, as well as payments for such parts sold by Defendant and its co-conspirators, traveled in interstate and foreign trade and commerce.

32. Plaintiffs purchased a substantial volume of automobiles and trucks. A substantial volume of vehicles containing Relevant Parts manufactured by Defendant and its co-conspirators were sold to California state agencies, California businesses, and California consumers.

33. The anticompetitive acts were intentionally directed at the United States market for Relevant Parts because Defendant and its co-conspirators intentionally sold them to automobile manufacturers which in turn sold vehicles in the United States and in the State of California. The business activities of Defendant and its co-conspirators in connection with the production and sale of Relevant Parts that were the subject of these conspiracies were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### The Pass-Through of Overcharges to Consumers

34. Defendant and its co-conspirators' conspiracies to fix, stabilize, and maintain the price of Relevant Parts at artificial levels resulted in harm to Plaintiffs because they resulted in Plaintiffs paying higher prices for such parts and automobiles installed with them than

they would have paid in the absence of the conspiracies. The entire overcharge at issue was passed onto the State of California.

## Fraudulent Concealment

35. Throughout the period of conspiracy, Defendant and its co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs.

36. Even though Plaintiffs exercised reasonable diligence, they could not discover the violations of law alleged in this Complaint until long after the commencement of their conspiracues.

37. The Department of Justice began investigation into conspiracies in the auto part industry as early as 2010, but the complete scope of products and companies involved in the conspiracies has not been disclosed to the public yet.

38. Defendant and its co-conspirators successfully and affirmatively concealed the nature of their conspiracies and unlawful conduct in furtherance of the conspiracies in at least the following respects:

   a. By agreeing among themselves to meet at locations where the conspiracy was less likely to be detected;

   b. By agreeing among themselves to engage in illegal bid-rigging and price-fixing conspiracy, which is by its nature self-concealing; and

   c. By agreeing among themselves to keep the existence of the conspiracy secret, including the usage of secret code names.

39. Defendant's and its co-conspirators' effective, affirmative, and fraudulent concealment effectively prevented timely detection by Plaintiffs, and was a substantial factor in causing Plaintiffs' harm.

## Injury

40. But for Defendant's and its co-conspirators' anticompetitive acts, Plaintiffs would have been able to purchase automobiles that incorporated Relevant Parts at lower prices or at prices that were determined by free and open competition.

41. Defendant's and its co-conspirators' unlawful activities took place within interstate and foreign trade and commerce, and had direct, substantial, and reasonably foreseeable effect on United States and California commerce.

42. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Plaintiffs were not able to purchase Relevant Parts and automobiles installed with them at prices that were determined by free and open competition.  Consequently, Plaintiffs have been injured because they paid more than they would have paid in a free and open competitive market.  There is a domestic injury that is concrete, quantifiable, and directly traceable back to the Defendant's and its co-conspirators' anticompetitive conduct.

43. As Plaintiffs paid more than what they would have paid absent the conspiracies, Defendant's and its co-conspirators' conduct has resulted in deadweight loss to the economy of the State of California, including reduced output, higher prices, and reduction in consumer welfare.

44. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Defendant and its co-conspirators benefitted unjustly from the supra-competitive and artificially inflated prices.  The unjust financial profits on the sale of Relevant Parts resulted from their illegal and anticompetitive conduct.

## VIOLATIONS ALLEGED

## Count I

### (Violation of Section 1 of the Sherman Act)

45. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

46. Defendant and its co-conspirators engaged in conspiracies which unreasonably restrained the trade or commerce among the several States and with foreign nations; thus, their conduct violates Section 1 of the Sherman Act (15 U.S.C. §1). The State of California is entitled to relief resulting from the Defendant's conduct.

47. Defendant and its co-conspirators entered into continuing agreements, understandings, and conspiracies to raise, fix, maintain, and stabilize prices charged for Relevant Parts during the period of conspiracies.

48. Their unlawful conduct in furtherance of the conspiracies was intentionally directed at the United States market for Relevant Parts and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices of such parts in the United States.

49. The State of California has been injured by being forced to pay artificially inflated prices for Relevant Parts and automobiles installed with such parts than they would have paid in the absence of the conspiracies.

50. As a direct and proximate result of Defendant's conduct, Plaintiffs have been harmed and will continue to be damaged by being forced to pay supra-competitive prices that they would not have paid in the absence of the Defendant's conduct.

51. The alleged contracts, combinations, or conspiracies are per se violations of the federal antitrust laws.

52. Unless permanently restrained and enjoined, Defendant will continue to unreasonably restrain fair and open competition for Relevant Parts.  Plaintiffs are entitled to an injunction against Defendant to prevent and restrain the violations alleged herein.

## Count II

### (Violation of the Cartwright Act, Business & Professions Code Section 16720)

53. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

54. From at least June 2002 through at least February 2010, the exact dates being unknown to Plaintiffs, Defendant and its co-conspirators entered into and engaged in continuing unlawful trusts for the purpose of unreasonably restraining trade in violation of California Business and Professional Code section 16720.

55. Defendant and its co-conspirators violated California Business and Professional Code section 16720 by forming continuing unlawful trusts and arranging concerted action among Defendant and its co-conspirators in order to fix, raise, maintain and stabilize prices of Relevant Parts.

56. In furtherance of the goals of the conspiracies, Defendant and its co-conspirators conspired to:

    a.   fix, raise, maintain, and stabilize the price of Relevant Parts;

    b.   submit rigged bids for the award of Relevant Parts contracts for automobile manufacturers; and

    c.   allocate markets for Relevant Parts amongst themselves.

57. The combinations and conspiracies alleged herein has had, *inter alia*, the following

effects:

    a.  price competition in the sale of Relevant Parts has been restrained, suppressed,

        and/or eliminated in the State of California;

    b.  prices for Relevant Parts sold by Defendant and its co-conspirators have been

        fixed, raised, maintained, and stabilized at artificially high and non-competitive

        levels in the State of California; and

    c.  Plaintiffs who purchased automobiles installed with price-fixed Relevant Parts

        have been deprived of the benefit of free and open competition.

58. As a direct and proximate result of Defendant's and its co-conspirators' unlawful

conduct, Plaintiffs were injured in their business and property because they paid more for

Relevant Parts and automobiles installed with such price-fixed parts than they would

have paid in the absence of Defendant's and its co-conspirators' unlawful conduct.  As a

result of Defendant's and its co-conspirators' violation of Section 16720 of the California

Business and Professions Code, Plaintiffs bring this claim pursuant to Section 16750(c)

and seek treble damages and the costs of suit, including reasonable attorneys' fees,

pursuant to Section 16750(a) of the California Business and Professions Code.  The

California Attorney General is entitled to fines and civil penalties to the maximum extent

permitted by law under California Business and Professions Code Section 16755.  The

California Attorney General may also obtain injunctive relief under California Business

and Professions Code Section 16754.5.

**Count III**

**(Violation of the Unfair Competition Law, Business and Professions Code Section 17200)**

59. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

60. From at least June 2002 through at least February 2010, the exact dates being unknown to Plaintiffs, Defendant and its co-conspirators committed acts of unfair competition, as defined by sections 17200, *et seq.*, of the California Business and Professions Code.

61. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant and its co-conspirators, as alleged herein, constituted common continuing conduct of unfair competition including unfair, unlawful and fraudulent business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code, including, but not limited to, the following:

   a. The violations of section 16720, *et seq.*, of the California Business and Professions Code, set forth above, thus constitute unlawful acts within the meaning of section 17200 of the California Business and Professions Code;

   b. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

   c. Defendant's acts and practices are unfair to consumers of Relevant Parts and of automobiles installed with price-fixed parts in the State of California, within the meaning of section 17200 of the California Business and Professions Code;

   d. Defendant's acts and practices are fraudulent or deceptive within the meaning of section 17200 of the California Business and Professions Code; and

14

e.  Defendant's actions to solicit others to join the conspiracies to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and/or artificially inflate prices for Relevant Parts, whether successful or not, are unfair business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code.

62. The unlawful and unfair business practices of Defendant and its co-conspirators caused Plaintiffs to pay supra-competitive and artificially inflated prices for Relevant Parts and automobiles installed with such parts.  Plaintiffs were injured in their business and property because they paid more than they would have paid in the absence of Defendant's and its co-conspirators' unlawful conduct.

63. The California Attorney General is entitled to recover civil penalties for the violations alleged in this Complaint not to exceed $2,500 for each violation of California Business and Professions Code section 17206.

## Count IV

## Unjust Enrichment

64. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

65. Plaintiffs were deprived of economic benefit because Defendant's and its co-conspirators' anticompetitive conduct created supra-competitive and artificially inflated prices for Relevant Parts.

66. Defendant and its co-conspirators enjoyed unjust financial profits which were derived from unlawful overcharges and monopoly profits. Their financial profits are economically traceable to overpayments for Relevant Parts by Plaintiffs.

67. The supra-competitive and artificially inflated prices for Relevant Parts, and unlawful monopoly profits enjoyed by Defendant and its co-conspirators are a direct and proximate result of Defendant's and its co-conspirators' unlawful practices.

68. It would lead to injustice if Defendant and its co-conspirators could retain any of the unlawful financial profits that are a direct and proximate result of their engagement in unlawful, unfair, and fraudulent conduct.

69. As alleged in this Complaint, Defendant and its co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendant's and its co-conspirators' unfair competition. Plaintiffs are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant's and its co-conspirators' engagement in unlawful, unfair, and fraudulent conduct.

70. As alleged in this Complaint, Defendant and its co-conspirators have been unjustly enriched as a result of their unlawful and anticompetitive conduct. Under sections 17203 and 17204 of the California Business and Professions Code, Plaintiffs are accordingly entitled to an injunction against Defendant in order to restrain the violations alleged herein and to equitable relief which includes restitution which may have been acquired by means of Defendant's and its co-conspirators' unfair and anticompetitive conduct. Plaintiffs are also entitled to civil penalties to the maximum extent permitted by law pursuant to section 17206, *et seq.*, of the California Business and Professions Code.

**Prayer for Relief**

71. Accordingly, Plaintiffs request that this Court:

    a.  Adjudge and decree that Defendant violated the Sherman Act (15 U.S.C. §1);

    b.  Adjudge and decree that Defendant's contracts, conspiracies, or combinations constitute illegal and unreasonable restraints of trade in violation of the Cartwright Act section 16720, *et seq.*, of the California Business and Professions Code;

    c.  Adjudge and decree that Defendant's contracts, conspiracies, or combinations violate the Unfair Competition Law, section 17200, *et seq.*, of the California Business and Professions Code;

    d.  Award to Plaintiffs the maximum amount permitted under the relevant federal antitrust law;

    e.  Award to Plaintiffs damages, trebled, in an amount according to proof pursuant to Section 16750, *et seq.*, of the California Business and Professions Code;

    f.  Award to Plaintiffs the deadweight loss (i.e. the general damage to the economy of the State of California) resulting from Defendant's illegal activities;

    g.  Award to Plaintiffs restitution, including disgorgement of profits obtained by Defendant as a result of their acts of unjust enrichment, or any acts in violation of federal and state antitrust or consumer protection statutes and laws, including section 17200, *et seq.*, of the California Business and Professions Code;

    h.  Award to Plaintiffs pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

i. Award Plaintiffs the maximum civil penalties under section 17206 of the California Business and Professions Code for each violation of California Business and Professions Code section 17200, *et seq.,* as set forth in this Complaint;

j. Award Plaintiffs the maximum fines and civil penalties under section 16755 of the California Business and Professions Code for each violation of California Business and Professions Code section 16720, *et seq.,* as set forth in this Complaint;

k. Enjoin and restrain, pursuant to federal and state law, Defendant, its affiliates, assignees, subsidiaries, successors, and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct and from adopting in the future any practice, plan, program, or device having a similar purpose or effect to the anticompetitive actions set forth above;

l. Award to Plaintiffs their costs, including reasonable attorneys' fees; and

m. Order other legal and equitable relief as it may deem just and proper, including such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation in order to dissipate the anticompetitive effects of Defendant's violations, and to restore competition.

**Jury Trial Demanded**

72. Plaintiffs demand trial by jury for all causes of action, claims, or issues in this action which are triable as a matter of right to a jury.

18

Dated: July 12, 2022

ROB BONTA
Attorney General of California

/s/  Anik Banerjee
KATHLEEN E. FOOTE
Senior Assistant Attorney General
ANIK BANERJEE
WINSTON H. CHEN
CA State Bar No. 236960
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6058
  Anik.Banerjee@doj.ca.gov
*Attorneys for Plaintiffs*